The opinion of the Court was delivered by
Johnston, Gh.
I think the Chancellor has properly dismissed the bill as respects the claim of the plaintiff, Alwin S. Britton, and also as to the claim of Brunson, now the sole representative in interest, of Mrs. Brunson, deceased.
I am also of opinion that as to the claim of the other plaintiff, Miss Britton, the decree properly disposes of the matter of the negroes.
And I do not see much reason to differ from the result of the Chancellor’s decree as to the lands.
There is no doubt that the sale of the- lands to Mr. Dubose, transferred the title to the latter, subject to the mortgage.
There is much reason to doubt whether the executor purchased the equity of redemption of Mr. Dubose, when sold by the Sheriff. I should rather conclude he did not; but that it was bought by his son, and afterwards conveyed to Mr. White.
But when, — in whatever way he became the owner of the title, — the utmost that can fairly be insisted on is, that being mortgagee of the mortgaged premises, the legal operation of the mortagage was extinguished; but still there was an equity in his cestui que trusts to have the mortgage set up and *284 enforced for satisfying the debt in which they are interested. The case of Black vs. Hair, (2 Hill Ch. 622,) would seem to imply that he might have bought the premises, even if sold under the mortage itself, if he paid a fair price.
Then, when he conveyed the premises to the Bradford Springs Company, which was done for a fair price — the title passed — subject, nevertheless, to the equitable lien of the cestui que trusts, under which he himself had held it. In this sale, computing interest on the debt of Mr. Dubose, still unpaid, with annual rests as provided for in the contract with Mr. Dubose, — it appears that he made a very trifling profit,— if any.
But taking it to be correct, that the equity of the cestui que trusts was only for this debt, then let us look to the effect of it.
I think the ' decree properly throws the primary responsibility on Mr. White’s estate, to make good the mortgage debt to his cestui que trusts.
Then, the equity of the mortgage, in the next place, attends the land in the hands of the Bradford Springs Company ; they having notice when they bought.
But then, this company alienated portions of the land. I think the recitals of the deeds under which Mr. Morgan acquired title to a portion, were notice to him, — even if by payment of the purchase-money, he were entitled to rely on the plea of purchase without notice. The deed to Mr. Dubose is recited, which obliged Mr. Morgan to look into his title, and then the mortgage being on record, the registry affected him with notice of the incumbrance.
But the law is well settled that the portion purchased by Mr. Morgan is not equitably liable, until that portion retained by the company be first subjected.
It is true the company may have subsequently aliened other portions to persons not impleaded in this suit. But still, Mr. Morgan has a right to ask that before he is made liable, (or rather his land,) these other persons be brought in. The *285 decree will then be (if all of them are equally affected with notice, and if the primary responsibility of Mr. White’s estate prove unavailing) that the lands in the hands of the company, and its different alienees, be subjected — by taking hold of the retained land first; and proceeding step by step, until the first alienee be reached. The liability is in the inverse order of the alienations.
It is my judgment that the decree be affirmed, except as modified by the opinion I have expressed; and it is so ordered.
Dunicin and DaRGAN, 00., concurred.